Nott, J.,
delivered tbe opinion .of tbe court:
Tbis is an action brought to recover for 40 tons of bay at $20 per ton, and 16 bead of cattle, valued at $800.
There are three fatal objections to a recovery:
1. Tbe petition asks for no relief. Tbe rules of this court point out with particularity and care tbe necessary essentials of a petition, among which is tbis: “ The prayer, in which the claimant must state distinctly the amount for which he demands judgment, or the relief to which he may he entitled.” It is also one of tbe commonest requirements for either a declaration at law, or a bill in equity. Moreover, in this court, we have to estimate upon petitions filed for appropriations to meet our judgments, and tbe clerk has to report annually to Congress tbe amounts claimed by suitors, and the amounts awarded by tbe court. To require an officer charged with tbis duty to read through several hundred petitions, master their contents, and make calculations as to tbe varied items, causes of aetion, and deductions which they contain, would be an unreasonable transference of duty from tbe attorney to whom it belongs to tbe clerk to whom it does not belong. Tbe grounds for insist *43 ing on a compliance with a well-settled rule of pleading, are, in tbis particular, more numerous and as strong in this court as in any other.
2. The claimant was a voluntary resident within the insurrectionary districts. To establish his loyalty he calls only one witness. This witness’s testimony is chiefly negative j he “cannot say that he (Mr. Patterson) ever gave aid and comfort to the rebellion f he does “not know that he ever gave such aid and comfort;” as to whether the people in the neighborhood regarded the claimant as loyal, “ some did, and some did not as to whether he ever knerr the claimant to do anything in favor of the Union during the war, he £< cannot say that he didwas the claimant on friendly terms with persons engaged in the rebelión? “to a certain extent he was.” Another witness the claimant also called, his next-door neighbor, living within two hundred yards of his residence, but asked no question as to his own loyalty of the man who would probably be best acquainted with his life during the rebellion. In view of the positive requirements of the Act 25tli June, 1868, (15 Stat. L., p. 75,) and of the numerous decisions of this court upon the subject of loyalty and the evidence to establish it, we are at a loss to understand how a claimant can expect to recover with such an almost absolute failure of proof.
3. The Act ith July, 1864, (13 Stat. L., p. 381,) declares that our jurisdiction shall not extend to claims growing out of the “appropriation of, or damage to, property by the army.” In Lindsley’s case (4' 0. 01s. B., p. 359) we held that “ where am officer talces property in an insurrectionary State, and malees promises of payment or gives vouchers, the owner doing nothing whatever on the part of the pretended agreement, it ivill be held an appropriation of property by the army, and without the jurisdiction of the court.” With that case before him, the claimant has proved no act whatever of his own whereby the defendants acquired his property. He sues upon a quartermaster’s certificate, “ that there has been received from the farm ofB. L. Patterson, of Culpeper County, Virginia, the following military supplies,” &c. Then follows a declaration that the “ supplies will be accounted for on the property returns ” of the quartermaster; and that “ the oicner ivill be entitled to be paid for the same after the suppression of the rebellion, upon proof that he has from this date conducted himself as a loyal citizen of the United States.” It is *44 asserted that it was the policy of the government to make these bargains with persons within the insurrectionary districts, that the certificate was prepared by and issued under the authority of the Secretary of War, and that the bargain binds the defendants. However true this may be as a political or moral obligation for the consideration of Congress,- no bargain, we think, however faithfully kept, can clothe this court with jurisdiction in defiance of the statutes regulating its jurisdiction. The quartermaster’s certificate states that the property was “ received from the farm.'” One witness testifies: “ The Federal cavalry, under General John Pope, toolc several beef cattle and several staelcs of hay from Mr. Patterson for the use of the cavalry.” Another: 11 At the time the cavalry came in, Mr. Patterson had both cattle and hay, and both disappeared while the cavalry remained on our premisesP This witness also states that u General Hatch upon one occasion, while at my house, said: ‘ Smith, you and Patterson have suffered >icavily by our army, and you shall both be compensated.’ ” This is all the evidence to establish a contract. We think it shows an u appropriation.”
The judgment of this court is that the petition be dismissed.